### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. **BRENDA GILLESPIE**, an individual, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 14-CV-749-JED-FHM<br>) |
| 1. **BIZJET INTERNATIONAL SALES AND,**<br>**SUPPORT**, a domestic company, | ) **JURY TRIAL DEMANDED**<br>) **ATTORNEY'S LIEN CLAIMED**<br>) **FOR THE FIRM** |
| Defendant. | ) |

### COMPLAINT

**COMES NOW** the Plaintiff, Brenda Gillespie ("Plaintiff"), through undersigned counsel, Charles C. Vaught of the firm *Armstrong & Vaught, P.L.C.*, and hereby submits the following Complaint against Bizjet International Sales and Support, ("Defendant"), and states and alleges as follows:

### STATEMENT OF CASE

This action seeks declaratory relief, actual, compensatory and punitive damages, and costs and attorney fees, for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*, and Oklahoma law, committed by the Defendant for the sexual harassment and retaliation Plaintiff was subjected to while employed with Defendant.

### JURISDICTION AND VENUE

1. Jurisdiction is invoked pursuant to 28 U.S.C. §1343(a)(4) and 28 U.S.C. §1331, and the state law claims pursuant to the doctrine of pendent jurisdiction.

2. This action arises under 42 U.S.C. §2000e and the common law of the State of Oklahoma.

3. Declaratory and equitable relief are sought pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202, and compensatory and punitive damages are sought pursuant to 42 U.S.C. §§ 2000e, *et seq*.

4. Costs and attorneys' fees may be awarded pursuant to Rule 54 of the Federal Rules of Civil

and the above statutes.

5. This Court has jurisdiction over the parties and the subject matter of this action, and this action properly lies in the Northern District of Oklahoma, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1391(b), because the unlawful employment practices alleged herein arose in this judicial district.

6. Plaintiff is and was, at all times relevant hereto, a resident of the State of Oklahoma residing in Broken Arrow, Tulsa County, Oklahoma.

7. Defendant is, and was at all times relevant to this cause of action, a corporation doing business in, and with significant contacts to, the State of Oklahoma and maintain offices in Tulsa, Tulsa County, Oklahoma.

8. The acts and/or omissions giving rise to this cause of action occurred in Tulsa County, State of Oklahoma.

**PARTIES**

9. Plaintiff is, and was at all times relevant to this cause of action, a Caucasian female.

10. Defendant was and is now existing under the laws of the State of Oklahoma, and is, and was at all times hereinafter mentioned, qualified to do and to transact business in the City of Tulsa, State of Oklahoma.

11. Defendant does and did, at all times relevant to this cause of action, employ in excess of 15 employees.

12. In conformance with Title VII statutory prerequisites, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") within 300 days of the actions complained of herein.

13. The EEOC completed its investigation and issued the Plaintiff a Right to Sue letter on November 18, 2014 (attached as Exhibit "1" and hereby incorporated by reference as though fully set forth herein), which was received by Plaintiff on November 20, 2014.

**OPERATIVE FACTS**

14. Plaintiff was employed by Defendant from February of 2010 through February 25, 2014 and served initially as a Document Control Specialist until she was promoted to Crew Chief.

15. On or about October 12, 2012, at a company Oktoberfest Employee night, Tom McMinn began making Plaintiff and another employee, Sharon Fairchilds, uncomfortable with the way he was staring at them. Mr. McMinn recorded Ms. Gillespie and Ms. Fairchilds on the dance floor and re-played it for the men in the QA Department the following day.

16. Subsequently, at a department luncheon, Mr. McMinn was leaning up against a counter and looking Mrs. Fairchilds up and down and said he was enjoying the view, which was overheard by other employees who laughed, including Alan Walker.

17. In October 2013, Dave Willier was hired to replace Mr. McMinn, but Plaintiff was required to continue reporting to both men. From day one, Mr. Willier made sexual innuendo and comments that were offensive. One day, Plaintiff was eating and Mr. Willier made a sexual comment about Plaintiff's lipstick on a banana as she was eating it. He proceeded to repeat this comment to all the men in QA, who made comments to Plaintiff about it the rest of the day.

18. On October 17, 2013, Mr. McMinn came up and straddled Plaintiff from behind. This made Plaintiff very uncomfortable and she moved to another table. The person Plaintiff was speaking to at the table made the comment that Mr. McMinn's actions were weird.

19. Later, on October 21, 2013, at a birthday party out of the office, Mr. McMinn asked Mrs. Fairchilds if she wanted him to kick her husband's ass for talking to other women. He also stated that he wished that he and Mrs. Fairchilds were single so they could hook up. Also, Mr. Dave Willier was being inappropriate in front of the women and cheered on by Mr. McMinn.

20. On December 13, 2013, Mr. McMinn approached Plaintiff and stated that she looked "sexy" and that she did not want to know all the dirty thoughts he was thinking. In addition to inappropriately dancing behind women, Mr. McMinn took a large feather from a display and

began rubbing it on himself and on women.

21. On December 17, 2013, Plaintiff reported the behavior of Mr. McMinn and Mr. Willier to Michelle Taylor, Director of Human Resources, stating that both Plaintiff and Mrs. Fairchilds were afraid to report this behavior for fear of losing our jobs. Mrs. Taylor commented that she had also witnessed some of this behavior and when addressing it she would not mention any names. Later that day, Mr. McMinn asked Plaintiff where she had been while she was in Human Resources. Plaintiff did not want Mr. McMinn to know she had reported him to HR so she told him she had been in the payroll department.

22. The following day, on December 18, 2013, Brett Jackson, Director of Program Management, informed Plaintiff that Mr. McMinn had advised him that one of the girls had turned him in.

23. On January 21, 2014, Mr. Willier sent Plaintiff a text message to listen to a song called "Mars." The lyrics were about having sex on Mars.

24. The next day on January 22, 2014, Mr. Willier sent Plaintiff another text message stating the song today is "It Won't Stop" by Sevyn Streeter and Chris Brown and another song called "Talk Dirty" by 2 Chains and Jason Deruolo.

25. On January 14, 2014, Mr. Willier sent Plaintiff a text to listen to "Today Waiter" and "I Like" by Jeremiah, both of which were sexually explicit.

26. When Plaintiff asked for February 6, 2014 off to have surgery on her finger, Mr. Willier stated that I should soak it in cider, insinuating that she should stick it inside herself, which was over heard by Donna Earnest, a co-worker.

27. On February 17, 2014, the new Director, Kerry Olson, was being introduced around and stated that he liked the Shocker's girls basketball team. Mr. Willier immediately made several dirty sexual hand gestures. Plaintiff then made the comment that Mr. Olson should not follow Mr. Willier's lead. This incident was witnessed by Donna Earnest.

28. Mr. Willier asked Plaintiff if I sent my boyfriend dirty pictures, to which she denied. Later that evening at a company function, Mr. Willier grabbed Plaintiff's phone to tease me about

pictures on my phone, which upset me given his earlier question.

29. The next day, February 18, 2014, Plaintiff was called in to the HR department and was accused of Time Fraud because my department was clocking each other in and out and the terminal gate or office clock times were different than the computer clock times. Plaintiff explained to Mrs. Taylor that her department had been trained and instructed by Tim Webb, the previous supervisor, that it was an accepted practice to do this and that all employees in Plaintiff's department engaged in this behavior.

30. Mrs. Taylor stated that even though she believed Plaintiff's department to be pro-company and not malicious, she was going to talk to Sven Duvall, Tom McMinn and Dave Willier. Later that day, Mrs. Taylor advised Plaintiff and Mrs. Fairchilds that they were on a three day suspension without pay, even though others participating in the same practice were not suspended.

31. Three days later, on February 24, 2014, Mrs. Taylor informed Plaintiff and Mrs. Fairchilds that they were terminated. Although the practice Plaintiff was terminated for was standard in their department, none of their co-workers were suspended or terminated for engaging in the behavior.

32. Plaintiff was subjected to sexual harassment in violation of Title VII of the Civil Rights Act.

33. Plaintiff was terminated in retaliation for reporting sexual harassment in violation of Title VII of the Civil Rights Act.

### FIRST CLAIM FOR RELIEF
### (SEXUAL HARASSMENT IN VIOLATION OF TITLE VII)

34. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein and further states as follows:

35. By and through, but not limited to, the ongoing sexual harassment described above, Plaintiff's terms and conditions of employment were so adversely affected that it created a hostile work environment.

36. The Plaintiff was subjected to the sexual harassment because of her gender, female.

37. As a result of the unwelcome sexual harassment, and Defendant's inactivity during the harassment, Plaintiff believed her work environment to be hostile.

38. Defendant was aware of the sexual harassment because Plaintiff reported behavior, it was both open and obvious, and because it was observed by Defendant's H.R. Manager.

39. Upon receiving these complaints, and also after observing the sexual harassment, the Defendant's management and Human Resources Department failed to promptly take appropriate corrective action to end the sexual harassment.

40. By and through, but not limited to, the actions described above, Defendant has violated Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C.§§ 2000e, *et seq*.

41. As a direct and proximate result of said actions by Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer lost wages and fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

42. Defendant's actions were wilful and done with reckless indifference to Plaintiff's rights, thus warranting an award of punitive damages.

43. Plaintiff has been injured by this sexual harassment, and is entitled to compensatory and punitive damages and any other damages allowed under Title VII of the Civil Rights Act of 1964 and 1991.

### SECOND CLAIM FOR RELIEF
### (RETALIATION IN VIOLATION OF TITLE VII)

44. Plaintiff hereby incorporates the preceding paragraphs as though full set forth herein.

45. That as a direct and proximate result of reporting the sexual harassment she was being subjected to by Defendant's agent and employee, Plaintiff were retaliated against by Defendant.

46. By and through, but not limited to, the events described above, Plaintiff's terms and conditions of employment was adversely affected due to the retaliation she was subjected to.

47. As a direct and proximate result of said retaliation by Defendant, Plaintiff has suffered, is now suffering and will continue to suffer lost wages and fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation and other pecuniary losses.

48. Defendant's actions were wilful and done with reckless indifference to Plaintiff's rights, thus warranting the award of punitive damages to Plaintiff.

49. Plaintiff has been injured by the retaliation complained of herein and is entitled to compensatory and punitive damages, as well as any other damages permitted, pursuant to Title VII of the Civil Rights Act of 1964 and 1991.

### THIRD CLAIM FOR RELIEF
### (NEGLIGENT SUPERVISION)

50. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

51. Plaintiff has suffered harm throughout her employment as a direct and proximate result of the Defendant's failure to act based on her sexual harassment complaints and the sexual harassment Defendant's management and Human Resources personnel observed.

52. Defendant knew or should have known that Defendant's agent and employee had a propensity for sexually harassing employees, as demonstrated by previous complaints made by the Plaintiff and the observations of its management and/or supervisory employees.

53. At the time of the sexual harassment, the Defendant had reason to believe that its employees, more specifically Mr. McMinn and Mr. Willier, would create an undue risk of harm to others.

54. That Defendant failed to act upon this information and thus failed to prevent and/or to bring about an end to the sexual harassment Plaintiff was subjected to.

55. As a direct and proximate result of said actions by Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer lost wages and fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

56. Defendant's actions were wilful and done with reckless indifference to Plaintiff's rights, thus

  warranting an award of punitive damages.

57. Plaintiff has been injured by this sexual harassment, and is entitled to actual, compensatory and punitive damages and any other damages allowed under Oklahoma state law.

## PRAYER FOR RELIEF

**WHEREFORE**, premises considered, Plaintiff prays for a declaration that the conduct engaged in by Defendant was and is in violation of Plaintiff's rights; for an award to Plaintiff of actual, compensatory, and punitive damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of One Hundred Thousand Dollars($100,000.000); costs and expenses, including reasonable attorney's fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any such other legal or equitable relief this Honorable Court deems just and proper.

Respectfully submitted,

**ARMSTRONG & VAUGHT, P.L.C.**

By: */s/ Charles C. Vaught*
   Charles C. Vaught, OBA #19962
   2727 E. 21st Street, Suite 505
   Tulsa, Oklahoma 74114
   (918) 582-2500 - Phone
   (918) 583-1755 - Fax
   ***Attorney for Plaintiff***